UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
WINSTON-SALEM DIVISION

| | |
|---|---|
| IN RE: ) | |
| ) | |
| SOUTH EASTERN MATERIALS, INC ) | |
| ) | |
| PO BOX 279 ) | |
| ALBEMARLE, NC 28002-0279 ) | Case No. B-09-52606 C-7W |
| ) | |
| Debtor. ) | |
| ) | |
| ) | |
| W. JOSEPH BURNS, TRUSTEE, ) | |
| ) | |
| ) | |
| Plaintiff, ) | Adv. No. 11-6035 |
| ) | |
| vs. ) | |
| ) | |
| DENNIS-LAMBERT INVESTMENTS ) | |
| LIMITED PARTNERSHIP ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM OPINION**

This matter came before the Court for hearing on March 8, 2012 upon the Motion for Preliminary Injunction (the "Motion"), filed by the Trustee on February 28, 2012. At the hearing, David F. Meschan appeared on behalf of W. Joseph Burns, Trustee (the "Trustee") and Ashley S. Rusher appeared on behalf of Dennis-Lambert Investments Limited Partnership ("DLI").

Based upon a review of the Motion, the evidence presented at the hearing, and a review of the entire official file, the Motion will be denied.

1

## FACTS

Southeastern Materials, Inc. (the "Debtor"), a North Carolina corporation in the business of truss-manufacturing, filed a voluntary petition under Chapter 11 on December 30, 2009. The Debtor operated as debtor-in-possession until July 30, 2009, when the case was converted to Chapter 7. The Debtor had significant dealings with the Dennis-Lambert Investments Limited Partnership ("DLI"), which was formed on October 18, 2000 by Tony Dennis, Betty Lambert, Kay Dennis, and Charlie Lambert for the purpose of acquiring and holding real estate investments. From DLI's formation until the date of the Debtor's petition, the Debtor served as the general partner of DLI and owned a two-percent interest. Mr. Dennis, Ms. Lambert, and unspecified members of their respective families own the remaining 98 percent as limited partners.

The Trustee brought this adversary proceeding against DLI on May 19, 2011, alleging fraudulent conveyances under Sections 548 and 544(b) and N.C. Gen. Stat. § 39.23.4, and unjust enrichment. The Complaint seeks monetary damages of at least $1,500,000 and a constructive trust on DLI's assets. Since 2008, DLI has conveyed fifteen properties in a continuing liquidation effort. The Trustee claims that a preliminary injunction is necessary to preserve its ability to collect any judgment it might obtain in this case. Specifically, the Trustee moves the Court for a preliminary injunction providing that DLI shall not

> transfer, encumber, pledge, refinance, or pay or transfer to its own partners or any third party, any of Defendant's assets, personal property interests or real property interests, including without limitation any proceeds owing to Defendant on account of its interest in the Goldmine entities. . . without approval by this Court following notice and a hearing.

DLI argues that the preliminary injunction sought is inappropriate because the Trustee has a remedy at law, namely attachment under N.C. Gen. Stat. § § 1-144, made applicable by Federal Rule of Civil

2

Procedure 64. Alternatively, DLI argues that the Trustee has not established any of the factors necessary for a preliminary injunction.

## JURISDICTION

The Court has jurisdiction over the subject matter of this proceeding pursuant to 28 U.S.C. §§ 151, 157 and 1334, and Local Rule 83.11 of the United States District Court for the Middle District of North Carolina. This is a core proceeding within the meaning of 28 U.S.C. §§ 157(b)(2)(A), which this Court has the jurisdiction to hear and determine. Pursuant to the Supreme Court's ruling in Stern v. Marshall, -- U.S. --, 131 S.Ct. 2594 (June 23, 2011), the Court has the authority to enter a final order. In re CD Liquidation Co., LLC, 462 B.R. 124, 136 (Bankr. D. Del. 2011).

## ANALYSIS

The Trustee is entitled to seek the equitable remedy of injunctive relief. Under North Carolina law, "attachment may be had in any action the purpose of which, in whole or in part, . . . is to secure a judgment for money." N.C. GEN. STAT. § 1-440.2. An order of attachment may be used when the defendant is a person or domestic corporation which, with intent to defraud his or its creditors: (I) has removed or is about to remove property from this State; or (ii) has assigned, disposed of, or secreted, or is about to assign, dispose of, or secrete, property. N.C. GEN. STAT. § 1-140.3(5). DLI argues that where a remedy at law establishes the specific ground by which a party may seek a particular for of relief–here, preservation of the assets during the course of ongoing litigation–a request for an equitable remedy providing the same relief must be denied.

DLI's argument is inconsistent with Fourth Circuit precedent. In U.S. ex rel. Rahman v. Oncology Assocs, 198 F.3d 489, 495 (4th Cir. 1999), the Fourth Circuit considered whether the

3

district court was authorized to enter a preliminary injunction freezing assets. The ultimate relief sought in Rahman was similar to the relief sought here: money damages to remedy fraudulent transfers, and a constructive trust to remedy alleged unjust enrichment. The Fourth Circuit applied the standard for a preliminary injunction, explaining that

> [W]hen a plaintiff creditor asserts a cognizable claim to specific assets of the defendant or seeks a remedy involving those assets, a court may in the interim invoke equity to preserve the status quo pending judgment where the legal remedy might prove inadequate and the preliminary relief furthers the court's ability to grant the final relief requested.

Id. at 496. Similarly, in U.S. ex rel. Taxpayers Against Fraud v. Singer Co., 889 F.2d 1327 (4th Cir. 1989), the Fourth Circuit rejected the argument that the availability of attachment proceedings under state law precluded the Court from entering a preliminary injunction, finding that such a rule would too narrowly construe the courts's equitable powers under Rule 65. See also FTC v. Singer, Inc. 668 F.2d 1107, 1112 (9th Cir. 1982) ("The fact that the conditions for attachment, normally a remedy in actions at law, might not been met does not imply that another and equitable provisional remedy is not available."). Consistent with this controlling precedent, the Court concludes that it has the power to issue a preliminary injunction to preserve the status quo in order to protect the possibility of the equitable remedies sought by the Trustee.

In determining whether a preliminary injunction is appropriate, a court must apply the "balance-of-hardship" test. See Blackwelder Furniture Co. v. Seilig Mfg. Co., Inc., 550 F.2d 189, 194 (4th Cir.1977). Under this test, a court should consider (1) the likelihood of irreparable harm to the plaintiff if the preliminary injunction is denied; (2) the likelihood of harm to the defendant if the injunction is granted; (3) the likelihood that the plaintiff will succeed on the merits; and (4) the public interest. Safety-Kleen, Inc. (Pinewood) v. Wyche, 274 F.3d 846, 858-

4

59 (4th Cir. 2001); see also Winter v. Natural Res. Def. Council, Inc., 555 U.S. 7, 20 (2008). The Fourth Circuit has explained, "The traditional office of a preliminary injunction is to protect the status quo and to prevent irreparable harm during the pendency of a lawsuit ultimately to preserve the court's ability to render a meaningful judgment on the merits." In re Microsoft Corp. Antitrust Litig., 333 F.3d 517, 525 (4th Cir. 2003) abrogation on other grounds recog. in Bethesda Softworks, LLC v. Interplay Entm't Corp., slip op., 2011 WL 5084587, at *2 (4th Cir. Oct. 26, 2011).  General equitable authority does not authorize prejudgment injunctions in actions solely at law.  Grupo Mexicano de Desarrollo S.A. v. Alliance Bond Fund, Inc., 527 U.S. 308, 318-19 (1999). Thus, as an initial matter, the Court must determine whether the Trustee seeks cognizable relief in equity involving assets of DLI before considering whether the Trustee has demonstrated a likelihood of irreparable harm.

     The Trustee's complaint seeks both legal and equitable relief.  The Fourth Circuit has held that the court's equitable powers to issue a preliminary injunction are not defeated when money damages are claimed along with a constructive trust.  In U.S. ex rel. Rahman v. Oncology Assocs, the plaintiff sought money damages to remedy fraudulent transfers and a constructive trust to remedy alleged unjust enrichment. The Rahman court held that the unjust enrichment count was "recognized as equitable" and that a constructive trust is "a tool of equity to prevent unjust enrichment." Rahman, 198 F.2d at 497-98 (citing Capital Investors Co. v. Executors of Estate of Morrison, 800 F.2d 424, 427 (4th Cir. 1986). Consistent with the holding in Rahman, the Court may issue equitable relief in this case because the Trustee's complaint does not present a claim solely for money damages.

When applying the four-factor test, the Court must first balance "the likelihood of irreparable harm to the plaintiff if denied and of harm to the defendant if granted." See Manning v. Hunt, 119 F.3d 254, 263 (4th Cir.1997). The plaintiff must demonstrate that the harm is "neither remote nor speculative, but actual and imminent." Id. (quoting Rum Creek Coal Sales, Inc. v. Caperton, 926 F.2d 353, 359 (4th Cir.1991)). Where the harm suffered by the moving party may be compensated by an award of money damages at judgment, courts generally have refused to find that harm irreparable. Hughes Network Systems, Inc. v. InterDigital Communications Corp., 17 F.3d 691, 694 (4th Cir. 1994), citing Morton v. Beyer, 822 F.2d 364, 371–72 (3d Cir.1987); Foxboro Co. v. Arabian Am. Oil Co., 805 F.2d 34, 36 (1st Cir.1986). Even if a loss can be compensated by money damages at judgment, however, extraordinary circumstances may give rise to the irreparable harm required for a preliminary injunction. Id. The Fourth Circuit has recognized that insolvency may alter the status quo and undermine a court's ability to render meaningful judgment. Therefore, a preliminary injunction may be appropriate where "damages may be unobtainable from the defendant because he may become insolvent before final judgment can be entered.." Hughes Network Sys.,17 F.3d at 694; see also Taxpayers Against Fraud, 889 F.2d at 1330.

The Trustee has failed to meet his burden to show that irreparable harm will result from the absence of an injunction. The Trustee contends that if the Court denies his request for a preliminary injunction, then DLI will continue to liquidate, encumber, and/or pledge its assets such that a judgment entered against DLI would be uncollectible. DLI's president, Tony Dennis, testified that in February 2012, DLI began liquidating collateral to satisfy the Debtor's

6

indebtedness to its secured lenders.[1]  Many of the properties that DLI has not already liquidated are currently for sale or will be offered for sale soon.  As part of this ongoing liquidation, DLI has conveyed fifteen properties since the petition date. The Trustee alleges that DLI and/or its partners have received proceeds, distributions, or other compensation in connection with the transactions.

     The Trustee's allegations are insufficient to show irreparable harm under the standard established by the Fourth Circuit. Eleven of the fifteen post-petition sales were by creditor sanctioned public auctions in lieu of foreclosures.  In other words, the proceeds were distributed to the Debtor's creditors: each of the auction sales resulted in sale proceeds divided by agreement between Bank of Stanly and First Bank to pay various secured obligations of the Debtor.  The proceeds of the sales have reduced the claims of First Bank in the Debtor's Chapter 7 by $609,968, thereby benefitting rather than harming the estate.  The remaining four post-petition conveyances were private, arms-length sales to disinterested and independent third parties.  There is no allegation that any of these sales were for less than fair market value.  Indeed, given that Ms. Lambert and Mr. Dennis were personally liable for the debts secured by such real property, they had a significant interest in selling the properties for the best possible price.  Ms. Lambert and Mr. Dennis each received $50,000 in proceeds from the private sales of property.  According to Ms. Lambert's testimony, most–if not all–of these funds she and Mr. Dennis received were reinvested in the Debtor to provide working capital.  DLI's business

---

[1] DLI pledged its real property assets to secure the Debtor's obligations to Bank of Stanly and First Bank.

records show that the proceeds were either paid to the Debtor or used to pay DLI's ordinary business expenses.

The Trustee has not carried his burden to establish that DLI's ongoing liquidation effort, largely conducted for the benefit of the Debtor's secured creditors, will cause irreparable harm to the estate. In order for the court to find irreparable injury, the Trustee must show a "realistic threat of insolvency." Taxpayers Against Fraud, 889 F.2d at 1328. Even if the record reflects that DLI will continue to convey its assets prior to the entry of a final judgment in this case, the Trustee has made no allegation that Mr. Dennis, Ms. Lambert, or DLI is or will become insolvent as a result of the liquidation. As guarantors of the Debtor's debt, Ms. Lambert and Mr. Dennis, the member-managers of DLI, benefit from a reduction of that debt, but that does not harm the Trustee or the Debtor's estate. Although it appears that the Debtor was not compensated for its two-percent interest in DLI's properties, this fact alone is an insufficient basis for the Court to issue the extraordinary relief sought by the Trustee.

In light of the burden that the preliminary injunction sought by the Trustee would impose, the balance weighs substantially in favor of DLI. Without injunctive relief, the Trustee faces only the risks of collection that might attend any potential judgment. Issuing a preliminary injunction, by contrast, imposes a substantial hardship on DLI, including increased transaction costs, incurring additional attorneys fees, increased delay, and a chilling effect on potential sales of DLI property. The requirement of Court approval for future sales would likely result in lower sales prices to compensate buyers for the increased uncertainty and delay inherent in such a process. In balancing the harms in this matter, the Court is satisfied that the scale tips in DLI's favor.

## **CONCLUSION**

The Trustee has failed to meet his burden to show that he will suffer irreparable harm in the absence of an injunction. The balance of the equities favors DLI, and the Motion shall be denied. A separate order will be entered pursuant to Fed. R. Bankr. P. 9021.

UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
WINSTON-SALEM DIVISION

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| SOUTH EASTERN MATERIALS, INC | ) | |
| | ) | |
| PO BOX 279 | ) | |
| ALBEMARLE, NC 28002-0279 | ) | Case No. B-09-52606 C-7W |
| | ) | |
|     Debtor. | ) | |
| | ) | |
| W. JOSEPH BURNS, TRUSTEE, | ) | |
| | ) | |
|     Plaintiff, | ) | Adv. No. 11-6035 |
| | ) | |
| vs. | ) | |
| | ) | |
| DENNIS-LAMBERT INVESTMENTS LIMITED PARTNERSHIP | ) | |
| | ) | |
|     Defendant. | ) | |

PARTIES IN INTEREST

W. Joseph Burns, Trustee

David F. Meschan, Esq.

R. Bradford Leggett, Esq.

Ashley S. Rusher, Esq.

Dennis-Lambert Investments Limited Partnership

Michael D. West, Bankruptcy Administrator

10